UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

NIKKI BONDS, a resident
and citizen of Mississippi,

Plaintiff,

vs.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINES,

Defendant.
_____________________________/

**COMPLAINT**

Plaintiff, NIKKI BONDS, files this Complaint against Defendant CARNIVAL CORPORATION, a Panamanian corporation doing business as CARNIVAL CRUISE LINES with its principal Place of business in Miami-Dade County, Florida, and alleges:

**PARTIES**

1. Plaintiff, NIKKI BONDS (PLAINTIFF) is sui juris and is a citizen and permanent resident of Mississippi.

2. Defendant, CARNIVAL CORPORATION (CARNIVAL) is a Panamanian corporation with its principal place of business at 3655 NW 87

Avenue, Miami, Miami-Dade County, Florida. At all material times Defendant CARNIVAL CORPORATION has done business under the fictitious name CARNIVAL CRUISE LINES.

## JURSIDICTION

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy is in an amount exceeding Seventy Five Thousand Dollars and No/100 ($75,000.00) Dollars and complete diversity of citizenship exists between the parties.

4. In personam jurisdiction over the parties exists since Defendant CARNIVAL is and at all material times has been doing business in Florida, with its principal place of business in Miami, Florida, in this district, and hence has substantial, ongoing, continuous and systematic contacts with this district.

## VENUE

5. Venue is proper pursuant to the venue selection clause of in the operative cruise ticket contract between Plaintiff and Defendant, which specifies venue in this district, as well as being proper because of the Defendant's having its principal place of business in this district.

## PRELIMINARY ALLEGATIONS

6. At all material times Defendant CARNIVAL has been in the business of providing marine cruises to paying passengers and operated the vessel "Breeze"


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

among others, for that purpose.

7. That Carnival "Breeze" is a passenger vessel built in 2012 and first placed into service on or around June, 2012.

8. The "Breeze" has a dining area, located on Lido Deck 10, referred to by Defendant as the "Lido Market Place" restaurant and dining area.

9. The Lido Market Place restaurant flooring and adjacent walkways leading inside and out of the Lido Market Place on the "Breeze" consisted at all material times of yellow square tiles.

**NEGLIGENCE**

10. At an unknown exact time, but soon after the Breeze was placed into service in June 2012, there were numerous complaints by passengers and repeated frequent slip and fall accidents due to the slippery nature of the tile floors installed in the Lido Market Place area.

11. Upon information and belief, approximately 90 or more slip and fall accidents in the Lido Market Place restaurant were reported to CARNIVAL between June 2012 and January 15, 2016. See Carnival I- care records a copy of which is attached as Composite Exhibit 1.

12. Already as of October 2013, various officials of the Defendant including Defendant's Director of Occupational Safety Guillermo Dominguez had actual knowledge of at least 13 reported slip and fall accidents with


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

serious injuries inside the Lido Market Place. See email from Amand Bhagat, Breeze Environmental and Occupational Safety Officer to Guillermo "Willy" Dominguez dated October 1, 2013 a copy of which is attached as Exhibit 2.

13. As of 2013, upon information and belief, based on information available, Defendant's legal department including lawyers and staff members had actual knowledge of (17) or more slip and fall accidents onboard the Breeze inside the Lido Market Place restaurant between June, 2012 and 2013. See Defendant's answers to interrogatories in Minetto v. Carnival, (Exhibit 3).

14. Upon information and belief, between July 2013 and November 2014, there were dozens of additional slip and fall accidents inside the Breeze Lido Market Place..

15. Prior to the Plaintiff's slip and fall accident referenced below there were numerous lawsuits filed against Defendant for similar accidents on the Breeze, arising out of the slippery nature of the tile floors installed inside the Lido Market Place.

16. No later than July 2013, approximately one year after the Breeze was first placed into service, the Defendant hired a consulting firm named SEA, LTD, hereinafter (SEA) to test the coefficient of friction on Lido Market Place tile floor surfaces on the Breeze because of its knowledge of the complaints about the dangerous and slippery nature of the tile floors within the Lido Market Place which

had harmed many passengers. See Report of SEA, Ltd. dated July 24, 2013 ("Emond Report")(Exhibit 4) and Affidavit of Michael Magee (Exhibit 5).

17. On July 23, 2014, SEA acting through its principal, consulting engineer Bryan Emond, together with Mr. Dominguez as Defendant's Director of Occupational Safety, conducted inspection and coefficient of friction testing of the Breeze Lido Market Place tile floor surfaces.

18. On July 23, 2014 Mr. Emond issued a seven page written report (Exhibit 4), concluding that the floor surfaces inside the Lido Market Place tested below the the minimum acceptable value for slip resistance under applicable industry standards.

19. According to the Emond Report, 3 of 5 walkway surfaces tested were below industry standards for slip resistant test performance. Upon information and belief, the lowest tested slip resistant coefficients of friction tests were taken at locations "associated with food preparation..." and according to the report, "the walkway surfaces were not slip resistant in wet conditions and "...reduced slip resistance may be the result of contamination from food preparation areas." (Exhibit 4 at 1, 4).

20. Despite this actual knowledge of the substandard and hazardous nature of the Lido Market Place floor, Defendant failed to undertake adequate safety measures, failed to make necessary repairs, failed to replace the tile floors,

failure to apply abrasive stripping to the floors to increase their coefficient of friction, and failed to warn or even disclose to passengers what was known to Defendant about the slipperiness of the floors and the fall history of other passengers within the short time the vessel had been in service.

21. Defendant Carnival deliberately and intentionally concealed from passengers the information known to them concerning the risks of the Lido Market Place floor so that passengers lacked the opportunity to choose another vessel or even to undertake personal safety measures to overcome the hazards prior to entering the Lido market place restaurant..

22. On or about September, 2013, the Breeze onboard management employees, acting on their own without instructions from their supervisors, made arrangements for a third party independent contractor to apply an experimental/slip resistant resin known as “Stanta” to the Lido Market Place floors in an attempt to improve the inadequate slip resistance properties of the floor surface.

23. Upon information and belief, in February 2014 Defendant retained one Zdenek Hejzlar to test the floor surfaces on the Breeze to determine their slip resistance after the "Stanta" application.

24. Upon information and belief, testing performed by Mr. Hejzlar demonstrated that the Stanta application was not effective, in that it did not improve the slip resistance properties of the floor to acceptable safe levels under

industry standards.

25. At all material times, Defendant Carnival had numerous available corrective measures to overcome the dangers of the unsafe slippery floor surfaces in the Lido Market Place, including but not limited to: use of non-slip floor mats; increased frequency of available cleaning surfaces; application of abrasive materials' and replacing the floor surfaces with surfaces having improved slip resistance at safe levels. All but the last were, however, only temporary measures.

26. Upon information and belief, at all material times, Carnival knew or should have known that the only way permanently to correct the slip resistance problem with the Lido was to take the vessel out of service and replace the existing floor surfaces with tiles having better slip resistance.

27. In an email dated September 26, 2013 sent by ship manager Domenico Otrello to Mr. Dominguez, Mr. Otrello stated "I've seen this kind of problem on each and every Carnival vessel I've been working on the last 18 years…the only logical approach to have this problem permanently solved would be complete replacement of the Lido Restaurants flooring by using a better grit tile as done in the past on board the Destiny, Triumph, Victory, Valor etc…". (Exhibit 6).

28. At all material times Carnival knew that the Stanta application was not an effective permanent safety measure but instead was only a temporary and

not effective "patching up" of the dangerous condition which would not be safe until the tiles could be completely replaced.

29. According to internal documents from minutes of Defendant's safety meetings obtained in approximately August, 2013 titled "Safety Concerns" state that "The Lido Market Place Tile **are serious safety hazard and is an engineering and design defect that should be fixed**…" See Exhibit 7

30. Upon information and belief, other Carnival passenger vessels including the Carnival Magic have tile floor surfaces substantially similar to the Lido Market Place floors used on the Breeze; and there have been numerous reported slip and fall accidents on those vessels on the substantially similar flooring.

31. At all material times, Carnival knew or should have known that the tile floors on the Breeze were slippery and were dangerous to passengers. Nevertheless, Carnival acted with willful, wanton, and reckless disregard for the safety of its passengers for financial motivations, specifically in order to prevent loss of passenger revenues during the time necessary to repair the Breeze and other vessels and also so that it would not incur the costs of the needed repair or replace the tile floors.

32. On or about September 19, 2016, Plaintiff was a fare paying passenger on board the Carnival vessel "Breeze." As of that time, there had been

approximately 90 or more reported slip and fall accidents on the Lido Market Place flooring since the vessel had been placed in service in June of 2012, but the original unsafe tile referenced above had not been replaced.

33. As the Plaintiff was entering the Lido Market Place buffet dining area on Deck 10, she slipped and fell as a result of the slippery floor surface referenced above, and sustained a broken left leg and other injuries.

34. On or about February 21, 2017, the Plaintiff through counsel submitted by letter a written notice of claim to the Defendant as required by Paragraph 12(a) of the Ticket Contract. In addition, she previously completed a passenger injury statement onboard the ship and sent a letter to the Defendant notifying them of her injuries.

35. At all material times, Defendant CARNIVAL owed Plaintiff the duty to exercise reasonable care to maintain the floors of the "Breeze" in areas accessible to passengers, including the Lido Market Place restaurant on Deck 10 and surrounding walkways, in a reasonably safe condition.

36. At all material times before the Plaintiff slipped and fell as alleged above, Defendant CARNIVAL knew or should have known of the dangerous condition existing on the Breeze Lido Market Place floors where the Plaintiff fell, but failed to exercise reasonable care and was thereby negligent in one or more of the following respects:

a. Failing to exercise reasonable care in the design, installation, and selection of the floor surfaces used within the Lido Market Place restaurant.

b. Failing to maintain the Lido Market Place restaurant floor in a reasonably safe condition;

c. Failing to exercise reasonable care in inspecting the Lido Marketplace flooring for slipperiness or hazardous foreign substances;

d. Failing to exercise reasonable care in establishing, implementing, and enforcing safe policies and procedures regarding cleaning and maintenance of the floor of the Lido Market Place;

e. Failing to undertake adequate measures to cure the risks of contamination from adjacent cooking areas;

f. Failing to warn the Plaintiff that the Lido Market Place restaurant and or area where she fell was slippery and dangerous;

g. Failing to adequately improve, repair or replace the tile floor surfaces.

h. Failing otherwise to exercise reasonable care measures which more likely than not would have prevented Plaintiff's fall.

37. As a direct and proximate result of one or more of Defendant's negligent acts as alleged above, the Plaintiff was injured about her body and extremities, suffered physical pain and suffering as well as mental and emotional

anguish from her injuries, suffered loss of enjoyment of life, physical disability, impairment, and inconvenience in the normal pursuits and pleasures of life, incurred medical expenses in the care and treatment of her injuries, including surgical repair, has lost earnings, and has sustained a loss of earning capacity. These injuries and damages are permanent or continuing in nature and Plaintiff will continue to sustain these injuries and damages in the future.

38. As a further direct and proximate result of the Defendant's acts and omissions alleged above, and Defendant's either willful, wanton or reckless disregard for the safety of their passengers and conduct detailed above, the Plaintiff is entitled to an award of punitive damages. The Defendant's acts and omissions as described above were intentional, willful, wanton and in reckless disregard of the safety of Plaintiff and its passengers. Additionally, at all material times, Defendant Carnival acted intentionally, willfully, and wantonly because Carnival had actual knowledge that the only "permanent solution" to the correct the problem inside the Lido Market place was to replace the tile floor surfaces but deliberately elected not to do so. At all material times, Defendant Carnival knew that any attempted corrective actions other than tile replacement were only temporary fixes and "patching up" of the problem and anything less would fail to correct the dangerous condition. The Defendant instead willfully or recklessly disregarded the safety of their passengers because the Defendant made decided to not replace the tile floor


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

surfaces despite the Defendant's actual knowledge, well in advance of the Plaintiff's accident, of the well-known hazards as documented by the numerous previous similar slip and fall accidents, testing of the floor surfaces, and test reports in the Lido Marketplace restaurant and that the only permanent solution was to completely repair or replace the tile floors in the Lido market place. The Defendant willfully and in disregard of the life and safety of their passengers has decided to wait until the Carnival Breeze goes into dry dock in 2017 before it will repair or replace the tile floors thereby jeopardizing the life and safety of passengers until which includes the Plaintiff in this case.

**WHEREFORE**, the Plaintiff demands judgment for all compensatory damages and punitive damages recoverable under the law against the Defendant.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of all issues so triable as of right.

***s/Nicholas I. Gerson***
NICHOLAS I. GERSON
Bar Number 20899
ngerson@gslawusa.com
filing@gslawusa.com
jabaunza@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Plaintiffs
1980 Coral Way
Miami, Florida 33145
Telephone: (305) 371-6000
Facsimile: (305) 371-5749